*Helen Stewart*

Form 21
Residential Purchase & Sale Agreement
Revised 1/09
Page 1 of 5



©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
## SPECIFIC TERMS

1. Date: August 22, 2009    MLS No.: 29119473
2. Buyer: Hong Dan Huang, an unmarried person
3. Seller: Stewart
4. Property: Tax Parcel No(s).: 3031200070    ( King County)
   Street Address: 7215 33rd Ave S, Seattle    Washington 98118
   Legal Description: Attached as Exhibit A.
5. Included Items: ☑ stove/range; ☑ refrigerator; ☑ washer; ☑ dryer; ☑ dishwasher; ☐ hot tub; ☐ fireplace insert; ☐ wood stove; ☐ satellite dish; ☐ security system; ☐ other.
6. Purchase Price: ~~$203,000.00~~ $209,000 /Two hundred ~~three~~ Nine thousand dollars
7. Earnest Money: (To be held by ☐ Selling Broker; ☑ Closing Agent)
   Personal Check: $2,000.00   Two thousand dollars
   Note: $
   Other (____): $
8. Default: (check only one) ☑ Forfeiture of Earnest Money; ☐ Seller's Election of Remedies
9. Disclosures in Form 17: Buyer will ☑ ; will not ☐ have a remedy for Seller's negligent errors, inaccuracies, or omissions in Form 17
10. Title Insurance Company: Ticor Title Insurance Co.
11. Closing Agent: ☐ a qualified closing agent of Buyer's choice; ☑ Ticor Title & Escrow
12. Closing Date: 30 days or sooner after lien holder's consent is delivered to the Buyer
13. Possession Date: ~~☑ on Closing;~~ ☑ Other  21 Days after closing
14. Offer Expiration Date: 08/23/2009
15. Services of Closing Agent for Payment of Utilities: ☑ Requested (attach NWMLS Form 22K); ☐ Waived
16. Charges and Assessments Due After Closing: ☑ assumed by Buyer; ☑ ~~prepaid in full by Seller at Closing~~
17. Agency Disclosure: Selling Licensee represents ☑ Buyer; ☐ Seller; ☐ both parties; ☐ neither party
    Listing Agent represents ☑ Seller; ☐ both parties
18. Addenda: 22A(Financing); 22D(Opt. Clauses); 22K(Utilities); 22SS(Short Sale); 22T(Title Cont.); ~~35(Inspection);~~ 42(Agency Dscl.);

| Buyer's Signature: *HongDan Huang* | Date: 8/22/09 | Seller's Signature | Date |
|---|---|---|---|
| Buyer's Signature | Date | Seller's Signature | Date |

Buyer's Address: 6542 30th Ave. S.
City, State, Zip: Seattle, WA, 98108
Phone / Fax

Seller's Address:
City, State, Zip: Seattle, WA
Phone: 000-000-0000 / Fax

Buyer's E-mail Address

Seller's E-mail Address

| Selling Broker: Skyline Properties, Inc. | MLS Office No.: 5353 | Listing Broker: Property Network, Inc. | MLS Office No.: 5217 |
| Selling Licensee (Print): Lang Zhou | MLS LAG No.: 67352 | Listing Agent (Print): Darren Gill | MLS LAG No.: 31153 |
| Phone: 425-455-2065 | Fax: 425-646-4766 | Phone: 206-388-3387 | Fax: 206-367-2542 |

Form 21  
Residential Purchase & Sale Agreement  
Revised 1/09  
Page 2 of 5

©Copyright 2009  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*(continued)*

a. **Purchase Price.** Buyer agrees to pay to Seller the Purchase Price, including the Earnest Money, in cash at Closing, unless otherwise specified in this Agreement. Buyer represents that Buyer has sufficient funds to close this sale in accordance with this Agreement and is not relying on any contingent source of funds, including funds from loans, the sale of other property, gifts, retirement, or future earnings, except to the extent otherwise specified in this Agreement.

b. **Earnest Money.** Buyer agrees to deliver the Earnest Money within 2 days after mutual acceptance of this Agreement to Selling Licensee who will deposit any check to be held by Selling Broker, or deliver any Earnest Money to be held by Closing Agent, within 3 days of receipt or mutual acceptance, whichever occurs later. If the Earnest Money is held by Selling Broker and is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees, will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Earnest Money held by Selling Broker is over $10,000.00 Buyer has the option to require Selling Broker to deposit the Earnest Money into the Housing Trust Fund Account, with the interest paid to the State Treasurer, if both Seller and Buyer so agree in writing. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the Earnest Money or the Earnest Money is $10,000.00 or less, the Earnest Money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the Earnest Money to Closing Agent at Closing. If all or part of the Earnest Money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom. The parties instruct Closing Agent to: (1) provide written verification of receipt of the Earnest Money and notice of dishonor of any check to the parties and Licensees at the addresses and/or fax numbers provided herein; and (2) commence an interpleader action in the county in which the Property is located within 30 days of a party's demand for the Earnest Money unless the parties agree otherwise in writing. The parties authorize the party commencing an interpleader action to deduct up to $250.00 for the costs thereof.

c. **Included Items.** Any of the following items, including items identified in Specific Term No. 5 if the corresponding box is checked, located in or on the Property are included in the sale: built-in appliances; wall-to-wall carpeting; curtains, drapes and all other window treatments; window and door screens; awnings; storm doors and windows; installed television antennas; ventilating, air conditioning and heating fixtures; trash compactor; fireplace doors, gas logs and gas log lighters; irrigation fixtures; electric garage door openers and remotes; water heaters; installed electrical fixtures; lighting fixtures; shrubs, plants and trees planted in the ground; all bathroom and other fixtures; and all associated operating equipment. If any of the above Included Items are leased or encumbered, Seller agrees to acquire and clear title at or before Closing.

d. **Condition of Title.** Unless otherwise specified in this Agreement, title to the Property shall be marketable at Closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions, presently of record and general to the area; easements and encroachments, not materially affecting the value of or unduly interfering with Buyer's reasonable use of the Property; and reserved oil and/or mining rights. Monetary encumbrances or liens not assumed by Buyer, shall be paid or discharged by Seller on or before Closing. Title shall be conveyed by a Statutory Warranty Deed. If this Agreement is for conveyance of a buyer's interest in a Real Estate Contract, the Statutory Warranty Deed shall include a buyer's assignment of the contract sufficient to convey after acquired title.

e. **Title Insurance.** Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current ALTA form of Homeowner's Policy of Title Insurance for One-to-Four Family Residence, from the Title Insurance Company. If Seller previously received a preliminary commitment from a Title Insurance Company that Buyer declines to use, Buyer shall pay any cancellation fees owing to the original Title Insurance Company. Otherwise, the party applying for title insurance agrees to pay any title cancellation fee, in the event such a fee is assessed. If the Title Insurance Company selected by the parties will not issue a Homeowner's Policy for the Property, the parties agree that the Title Insurance Company shall instead issue the then-current ALTA standard form Owner's Policy. The Title Insurance Company shall send a copy of the preliminary commitment to Seller, Listing Agent, Buyer and Selling Licensee. The preliminary commitment, and the title policy to be issued, shall contain no exceptions other than the General Exclusions and Exceptions in the Policy and Special Exceptions consistent with the Condition of Title herein provided. If title cannot be made so insurable prior to the Closing Date, then as Buyer's sole and exclusive remedy, the Earnest Money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in this Agreement, and this Agreement shall thereupon be terminated. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide insurable title.

Initials: BUYER: _MDM_ DATE: _8/12/09_ SELLER: _____ DATE: _____  
BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 21
Residential Purchase & Sale Agreement
Revised 1/09
Page 3 of 5

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*(continued)*

f. **Closing and Possession.** This sale shall be closed by the Closing Agent on the Closing Date. If the Closing Date falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, the Closing Agent shall close the transaction on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. "Closing" means the date on which all documents are recorded and the sale proceeds are available to Seller. Seller shall deliver keys and garage door remotes to Buyer on the Closing Date or on the Possession Date, whichever occurs first. Buyer shall be entitled to possession at 9:00 p.m. on the Possession Date. Seller agrees to maintain the Property in its present condition, normal wear and tear excepted, until the Buyer is entitled to possession. If possession transfers at a time other than Closing, the parties agree to execute NWMLS Form 65A (Rental Agreement/Occupancy Prior to Closing) or NWMLS Form 65B (Rental Agreement/Seller Occupancy After Closing) (or alternative rental agreements) and are advised of the need to contact their respective insurance companies to assure appropriate hazard and liability insurance policies are in place, as applicable.

g. **Section 1031 Like-Kind Exchange.** If either Buyer or Seller intends for this transaction to be a part of a Section 1031 like-kind exchange, then the other party agrees to cooperate in the completion of the like-kind exchange so long as the cooperating party incurs no additional liability in doing so, and so long as any expenses (including attorneys' fees and costs) incurred by the cooperating party that are related only to the exchange are paid or reimbursed to the cooperating party at or prior to Closing. Notwithstanding the Assignment paragraph of this Agreement, any party completing a Section 1031 like-kind exchange may assign this Agreement to its qualified intermediary or any entity set up for the purposes of completing a reverse exchange.

h. **Closing Costs and Prorations and Charges and Assessments.** Seller and Buyer shall each pay one-half of the escrow fee unless otherwise required by applicable FHA or VA regulations. Taxes for the current year, rent, interest, and lienable homeowner's association dues shall be prorated as of Closing. Buyer agrees to pay Buyer's loan costs, including credit report, appraisal charge and lender's title insurance, unless provided otherwise in this Agreement. If any payments are delinquent on encumbrances which will remain after Closing, Closing Agent is instructed to pay such delinquencies at Closing from money due, or to be paid by, Seller. Buyer agrees to pay for remaining fuel in the fuel tank if, prior to Closing, Seller obtains a written statement as to the quantity and current price from the supplier. Seller agrees to pay all utility charges, including unbilled charges. Unless waived in Specific Term No. 15, Seller and Buyer request the services of Closing Agent in disbursing funds necessary to satisfy unpaid utility charges in accordance with RCW 60.80 and Seller agrees to provide the names and addresses of all utilities providing service to the Property and having lien rights (attach NWMLS Form 22K Identification of Utilities or equivalent). Buyer is advised to verify the existence and amount of any local improvement district, capacity or impact charges or other assessments that may be charged against the Property before or after Closing. Seller will pay such charges that are encumbrances at the time of Closing, or that are or become due on or before Closing. Charges levied before Closing, but becoming due after Closing shall be paid as agreed in Specific Term No. 16.

i. **Sale Information.** The Listing Agent or Selling Licensee is authorized to report this Agreement (including price and all terms) to the Multiple Listing Service that published it and to its members, financing institutions, appraisers, and anyone else related to this sale. Buyer and Seller expressly authorize all Closing Agents, appraisers, title insurance companies, and others related to this Sale, to furnish the Listing Agent and/or Selling Licensee, on request, any and all information and copies of documents concerning this sale.

j. **FIRPTA - Tax Withholding at Closing.** The Closing Agent is instructed to prepare a certification (NWMLS Form 22E or equivalent) that Seller is not a "foreign person" within the meaning of the Foreign Investment In Real Property Tax Act. Seller agrees to sign this certification. If Seller is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

k. **Notices.** In consideration of the license to use this and NWMLS's companion forms and for the benefit of the Listing Agent and the Selling Licensee as well as the orderly administration of the offer, counteroffer or this Agreement, the parties irrevocably agree that unless otherwise specified in this Agreement, any notice required or permitted in, or related to, this Agreement (including revocations of offers or counteroffers) must be in writing. Notices to Seller must be signed by at least one Buyer and shall be deemed given only when the notice is received by Seller, by Listing Agent or at the licensed office of Listing Agent. Notices to Buyer must be signed by at least one Seller and shall be deemed given only when the notice is received by Buyer, by Selling Licensee or at the licensed office of Selling Licensee. Actual receipt by Selling Licensee of a Form 17, Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, Public Offering Statement or Resale Certificate, homeowners' association documents provided pursuant to NWMLS Form 22D, or a preliminary commitment for title insurance provided pursuant to NWMLS

Initials: BUYER __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____
BUYER _____ DATE: _____ SELLER: _____ DATE: _____

Form 21  
Residential Purchase & Sale Agreement  
Revised 1/09  
Page 4 of 5

©Copyright 2009  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**  
**GENERAL TERMS**  
*(continued)*

Form 22T shall be deemed receipt by Buyer. Selling Licensee and Listing Agent have no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address shown on this Agreement. Buyer and Seller must keep Selling Licensee and Listing Agent advised of their whereabouts in order to receive prompt notification of receipt of a notice.

l. **Computation of Time.** Unless otherwise specified in this Agreement, any period of time measured in days and stated in this Agreement shall start on the day following the event commencing the period and shall expire at 9:00 p.m. of the last calendar day of the specified period of time. Except for the Possession Date, if the last day is a Saturday, Sunday or legal holiday as defined in RCW 1.16.050, the specified period of time shall expire on the next day that is not a Saturday, Sunday or legal holiday. Any specified period of 5 days or less shall not include Saturdays, Sundays or legal holidays. If the parties agree that an event will occur on a specific calendar date, the event shall occur on that date, except for the Closing Date, which, if it falls on a Saturday, Sunday, legal holiday as defined in RCW 1.16.050, or day when the county recording office is closed, shall occur on the next day that is not a Saturday, Sunday, legal holiday, or day when the county recording office is closed. If the parties agree upon and attach a legal description after this Agreement is signed by the offeree and delivered to the offeror, then for the purposes of computing time, mutual acceptance shall be deemed to be on the date of delivery of an accepted offer or counteroffer to the offeror, rather than on the date the legal description is attached. Time is of the essence of this Agreement.

m. **Facsimile and E-mail Transmission.** Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any document or notice shall not be effective unless the parties to this Agreement otherwise agree in writing.

n. **Integration.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller.

o. **Assignment.** Buyer may not assign this Agreement, or Buyer's rights hereunder, without Seller's prior written consent, unless the parties indicate that assignment is permitted by the addition of "and/or assigns" on the line identifying the Buyer on the first page of this Agreement.

p. **Default.** In the event Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision, as identified in Specific Term No. 8, shall apply:

  i. **Forfeiture of Earnest Money.** That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure.

  ii. **Seller's Election of Remedies.** Seller may, at Seller's option, (a) keep the Earnest Money as liquidated damages as the sole and exclusive remedy available to Seller for such failure, (b) bring suit against Buyer for Seller's actual damages, (c) bring suit to specifically enforce this Agreement and recover any incidental damages, or (d) pursue any other rights or remedies available at law or equity.

q. **Professional Advice and Attorneys' Fees.** Buyer and Seller are advised to seek the counsel of an attorney and a certified public accountant to review the terms of this Agreement. Buyer and Seller agree to pay their own fees incurred for such review. However, if Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses.

r. **Offer.** Buyer agrees to purchase the Property under the terms and conditions of this Agreement. Seller shall have until 9:00 p.m. on the Offer Expiration Date to accept this offer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is actually received by Buyer, by Selling Licensee or at the licensed office of Selling Licensee. If this offer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

s. **Counteroffer.** Any change in the terms presented in an offer or counteroffer, other than the insertion of the Seller's name, shall be considered a counteroffer. If a party makes a counteroffer, then the other party shall have until 9:00 p.m. on the counteroffer expiration date to accept that counteroffer, unless sooner withdrawn. Acceptance shall not be effective until a signed copy is actually received by Seller, by Listing Agent or at the licensed office of Listing Agent. If the counteroffer is not so accepted, it shall lapse and any Earnest Money shall be refunded to Buyer.

t. **Offer and Counteroffer Expiration Date.** If no expiration date is specified for an offer/counteroffer, the offer/counteroffer shall expire 2 days after the offer/counteroffer is delivered by the party making the offer/counteroffer, unless sooner withdrawn.

Initials: BUYER: _HDH_ DATE: _8/22/09_ SELLER: _____ DATE: _____

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 21
Residential Purchase & Sale Agreement
Revised 1/09
Page 5 of 5

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**
**GENERAL TERMS**
*(continued)*

**u. Agency Disclosure.** Selling Broker represents the same party that Selling Licensee represents. Listing Broker represents the same party that the Listing Agent represents. If Selling Licensee and Listing Agent are different salespersons affiliated with the same Broker, then both Buyer and Seller confirm their consent to that Broker representing both parties as a dual agent. If Selling Licensee and Listing Agent are the same salesperson representing both parties then both Buyer and Seller confirm their consent to that salesperson and his/her Broker representing both parties as dual agents. All parties acknowledge receipt of the pamphlet entitled "The Law of Real Estate Agency."

**v. Commission.** Seller and Buyer agree to pay a commission in accordance with any listing or commission agreement to which they are a party. The Listing Broker's commission shall be apportioned between Listing Broker and Selling Broker as specified in the listing. Seller and Buyer hereby consent to Listing Broker or Selling Broker receiving compensation from more than one party. Seller and Buyer hereby assign to Listing Broker and Selling Broker, as applicable, a portion of their funds in escrow equal to such commission(s) and irrevocably instruct the Closing Agent to disburse the commission(s) directly to the Broker(s). In any action by Listing or Selling Broker to enforce this paragraph, the prevailing party is entitled to court costs and reasonable attorneys' fees. Seller and Buyer agree that the Licensees are intended third party beneficiaries under this Agreement.

**w. Cancellation Rights/Lead-Based Paint.** If a residential dwelling was built on the Property prior to 1978, and Buyer receives a Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (NWMLS Form 22J) after mutual acceptance, Buyer may rescind this Agreement at any time up to 3 days thereafter.

**x. Information Verification Period and Property Condition Disclaimer.** Buyer shall have 10 days after mutual acceptance to verify all information provided from Seller or Listing Agent related to the Property. This contingency shall be deemed satisfied unless Buyer gives notice identifying the materially inaccurate information within 10 days of mutual acceptance. If Buyer gives timely notice under this section, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. Buyer and Seller agree, that except as provided in this Agreement, all representations and information regarding the Property and the transaction are solely from the Seller or Buyer, and not from any Licensee. The parties acknowledge that the Licensees are not responsible for assuring that the parties perform their obligations under this Agreement and that none of the Licensees have agreed to independently investigate or confirm any matter related to this transaction except as stated in this Agreement, or in a separate writing signed by such Licensee. In addition, Licensees do not guarantee the value, quality or condition of the Property and some properties may contain building materials, including siding, roofing, ceiling, insulation, electrical, and plumbing, that have been the subject of lawsuits and/or governmental inquiry because of possible defects or health hazards. Some properties may have other defects arising after construction, such as drainage, leakage, pest, rot and mold problems. Licensees do not have the expertise to identify or assess defective products, materials, or conditions. Buyer is urged to retain inspectors qualified to identify the presence of defective materials and evaluate the condition of the Property. Licensees may assist the parties with locating and selecting third party service providers, such as inspectors or contractors, but Licensees cannot guarantee or be responsible for the services provided by those third parties. The parties agree to exercise their own judgment and due diligence regarding third party service providers.

**y. Disclosures in Form 17.** If Seller provides Buyer with a disclosure statement pursuant to RCW 64.06 (Form 17), Buyer may bring an action in tort to recover economic losses resulting from intentional misrepresentations in Form 17; and if the parties so agree in Specific Term No. 9, Buyer may bring an action in tort to recover economic losses resulting from negligent errors, inaccuracies, or omissions in Form 17. Nevertheless, Buyer is advised to use due diligence to inspect the Property to Buyer's satisfaction, as Seller may not know or have reason to know of defects that careful inspections might reveal. If, in Specific Term No. 9, the parties agree that Buyer will not have a remedy for economic loss resulting from negligent errors, inaccuracies, or omissions in Form 17, then Buyer assumes the risk of economic loss that may result from Seller's negligent misrepresentation in Form 17. Buyer maintains the right to bring any and all claims permitted under the common law, including fraudulent concealment. Buyer and Seller acknowledge that home protection plans may be available which may provide additional protection and benefit to Buyer and Seller.

Initials: BUYER: _LDH_ DATE: _5/22/09_ SELLER: _____ DATE: _____ 209
BUYER: _____ DATE: _____ SELLER: _____ DATE: _____ 210

Form 22A
Financing Addendum
Rev. 4/08
Page 1 of 2

FINANCING ADDENDUM
PURCHASE & SALE AGREEMENT

©Copyright 2008
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__ 1

between __Hong Dan Huang__ ("Buyer") 2

and __Stewart__ ("Seller") 3

concerning __7215 33rd Ave S, Seattle, WA 98118__ ("the Property") 4

1. **DOWN PAYMENT/LOAN APPLICATION.** This Agreement is contingent on Buyer obtaining the following loan or loans to purchase the Property (the "Loans"): ☑ Conventional First; ☐ Conventional Second; ☐ Bridge; ☐ VA; ☐ FHA; ☐ Rural Development ("RD"); ☐ Home Equity Line of Credit. Buyer agrees to pay __20%__ down, in addition to the Loans and to make written application and pay the application fee, if required, for the subject Property ☐ within _____ days (5 days if not filled in) after mutual acceptance of this Agreement, or ☐ if this Agreement is conditioned on the sale of Buyer's Property, within _____ days (5 days if not filled in) after Buyer satisfies that contingency ("Satisfaction") (from mutual acceptance if neither box checked), for the Loans to pay the balance of the purchase price. If Buyer fails to make application for financing within the agreed time, then the financing contingency contained herein shall be deemed waived. Buyer may not change the type of loan or the lender without Seller's prior written consent after the agreed upon time to apply for financing expires. For purposes of this Addendum, "lender" means the party funding the loan.

2. **FINANCING TIMELINES/LETTER OF LOAN COMMITMENT.** Unless Buyer has given notice waiving this financing contingency, no later than __30__ days (30 days if not filled in) after (a) mutual acceptance of the Agreement or (b) Satisfaction, if selected above, Buyer shall provide to Seller a letter of loan commitment from Buyer's lender which states the date of loan application, the current status of Buyer's loan application, and any conditions that remain for loan approval. A letter from the lender generated or dated at or prior to mutual acceptance shall not constitute a letter of loan commitment which complies with this paragraph. NWMLS Form 22AR should be used to provide notice of waiver or to transmit the letter of loan commitment.

3. **REVIEW OF LETTER OF LOAN COMMITMENT/TERMINATION.** Seller may give notice of Seller's election to terminate this Agreement at any time after the letter of loan commitment is due or received, whichever occurs first. If, within 3 days after Seller's notice, Buyer does not waive this financing contingency by notice, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. NWMLS Form 22AR should be used for the parties' notices.

4. **UPDATED LETTERS OF LOAN COMMITMENT.** Without suspending Seller's right to give notice of termination, Seller may request updated letters of loan commitment every 5 days after the date the previous letter of loan commitment was due.

5. **EARNEST MONEY.** If Buyer has not waived this financing contingency, and is unable to obtain financing after a good faith effort then, on Buyer's notice, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer after Buyer delivers to Seller written confirmation from Buyer's lender confirming the date Buyer's loan application for the subject property was made, that Buyer possessed sufficient funds to close and the reasons Buyer's application was denied. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such confirmation from Buyer's lender.

6. **INSPECTION.** Seller agrees to permit inspections required by Buyer's lender, including but not limited to structural, pest, heating, plumbing, roof, electrical, septic, and well inspections. Seller is not obligated to pay for such inspections except as otherwise agreed.

7. **APPRAISAL LESS THAN SALE PRICE.** If Buyer's lender's appraisal of the value of the Property is less than the Purchase Price, Buyer may, within 3 days after receipt of a copy of lender's appraisal, give notice of Buyer's election to terminate this Agreement unless Seller, within 10 days after receipt of such notice, delivers to Buyer either:
   (a) (i) If this Agreement is contingent on FHA, VA, or RD financing, a reappraisal or reconsideration of value by the same appraiser, at Seller's expense, in an amount not less than the Purchase Price or (ii) if this Agreement is contingent on non-FHA, non-VA, or non-RD financing, reappraisal, at Seller's expense, by the same appraiser or another appraiser acceptable to the lending institution in an amount not less than the Purchase Price; or
   (b) Written consent to reduce the selling price to an amount not more than the amount specified in the appraisal or reappraisal, whichever is higher. (Not applicable if this Agreement is conditioned on FHA, VA, or RD financing. FHA, VA, or RD does not permit the Buyer to be obligated to buy if the Seller reduces the Purchase Price to the appraisal value. The Buyer, however, has the option to buy at the reduced price.)

Initials: BUYER __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____ 48
BUYER _____ DATE: _____ SELLER: _____ DATE: _____ 49

Form 22A
Financing Addendum
Rev. 4/08
Page 2 of 2

**FINANCING ADDENDUM
PURCHASE & SALE AGREEMENT**
*(continued)*

©Copyright 2008
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

If such reappraisal or consent to reduction of Purchase Price is not so delivered, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. To permit the parties the foregoing times for notices, the Closing Date shall be extended accordingly. Buyer's waiver of this financing contingency constitutes waiver of this paragraph 7.

8. **SPECIAL LOAN COST PROVISIONS.**

   **FHA/RD LOAN COSTS.** If this sale is contingent on Buyer obtaining an FHA or RD loan, Seller agrees to pay _____ ($300.00 if not filled in), which shall be applied to that portion of Buyer's loan and settlement costs that the Lender is prohibited from collecting from the Buyer under FHA/RD regulations. Any balance remaining shall be payable to Buyer's loan discount at the interest rate selected by Buyer or to other settlement costs as allowed by FHA/RD regulations.

   **VA LOAN COSTS.** If this sale is contingent on Buyer obtaining a VA loan, Seller agrees to pay the full escrow fee for the entire transaction. In addition Seller agrees to pay _____ ($300.00 if not filled in), which shall be applied to that portion of Buyer's loan and settlement costs that the Lender is prohibited from collecting from the Buyer under VA regulations. Any balance remaining shall be payable to Buyer's loan discount, loan fee, interest buy down and/or financing and closing costs to the extent permitted by VA regulations and Buyer's loan amount is not thereby reduced.

   **CONVENTIONAL/OTHER LOAN COSTS.** Seller agrees to pay up to _____ ($0.00 if not filled in), which shall be applied to Buyer's loan and settlement costs, prepaids, loan discount, loan fee, interest buy down or financing and closing costs.

9. **FHA/VA/RD-APPRAISAL CERTIFICATE.** If this Agreement is contingent on Buyer obtaining FHA, VA, or RD financing, it is expressly agreed that notwithstanding any other provisions of this Agreement, Buyer shall not be obligated to complete the purchase of the Property unless Buyer has been given in accordance with HUD/FHA, VA or RD requirements a written statement by FHA, VA, RD or a Direct Endorsement lender, setting forth the appraised value of the Property (excluding closing costs). Buyer shall pay the costs of any appraisal. If the appraised value of the Property is less than the Purchase Price, paragraph 7 above shall apply. If Seller does not reduce the Purchase Price to the appraised or reappraised value, or deliver a reappraisal at or exceeding the sale price, the Buyer shall have the privilege and option of proceeding with the consummation of this Agreement without regard to the appraised value, provided the difference in excess of the appraised value is paid in cash.

   **PURPOSE OF APPRAISAL.** The appraised valuation is arrived at only to determine the maximum mortgage FHA, VA, or RD will insure. FHA, VA, or RD do not warrant the value or the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

10. **NOTICE TO BUYER CONCERNING INSURANCE.** The availability and cost of homeowners or property insurance on the Property depends on a number of factors, including your personal insurance, financial and credit history, materials and conditions present in or on the Property, and the claims history for the Property. Some insurance companies base part of their underwriting decision on loss history reports that show the history of insurance claims or property losses concerning the Property or made by you concerning other properties. At the time you apply for homeowners insurance, most insurance companies will only issue a binder to you. A binder is not an insurance policy and it is not a promise that a policy will issue. It is only a temporary commitment to provide insurance coverage, and insurance companies have additional time after issuing the binder to make a final decision about insurability and the amount of the insurance premium. Therefore, it is important for you to submit an insurance application as early as possible.

    **INSURANCE CONTINGENCY/APPLICATION.** This Agreement ☐ is ☐ is not (is, if not checked) conditioned upon Buyer obtaining a binder for a standard policy of homeowners or property insurance on the Property at an annual premium not to exceed ½ of 1% of the purchase price Buyer is paying for the Property with a deductible not to exceed $1000, exclusive of all additional declarations and riders (e.g., art, jewelry, earthquake, etc.). Buyer agrees to make application for insurance within _____ days (5 days, if not filled in) after mutual acceptance of this Agreement. If Buyer fails to make application within the agreed time, then this insurance contingency shall be deemed waived. This insurance contingency shall be deemed satisfied, unless within _____ days (15 days, if not filled in) after mutual acceptance of this Agreement, Buyer gives notice of inability to obtain a binder on the terms set forth above. If Buyer is unable to obtain a binder after making a good faith effort and timely gives notice of such inability, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. This contingency is not waived by a waiver of the financing contingency provided for above. Notices given pursuant to this paragraph may be given on NWMLS Form 90T.

Initials: BUYER _HDH_ DATE: _8/27/09_ SELLER: _____ DATE: _____
         BUYER _____ DATE: _____ SELLER: _____ DATE: _____

Form 22D  
Optional Clauses Addendum  
Rev. 5/09  
Page 1 of 2

©Copyright 2009  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

# OPTIONAL CLAUSES ADDENDUM
## TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__  1

betwee __Hong Dan Huang__ ("Buyer")  2

and __Stewart__ ("Seller")  3

concerning __7215 33rd Ave S, Seattle, WA 98118__ ("the Property").  4

**CHECK IF**  5
**INCLUDED:**

1. ☑ **Square Footage/Lot Size/Encroachments.** The Listing Agent and Selling Licensee make no representations  6
concerning: (a) the lot size or the accuracy of any information provided by the Seller; (b) the square footage of  7
any improvements on the Property; (c) whether there are any encroachments (fences, rockeries, buildings) on  8
the Property, or by the Property on adjacent properties. Buyer is advised to verify lot size, square footage and  9
encroachments to Buyer's own satisfaction within the inspection contingency period.  10

2. ☑ **Standard Form Owner's Policy of Title Insurance.** Notwithstanding the "Title Insurance" clause in the Agree-  11
ment, Seller authorizes Buyer's lender or Closing Agent, at Seller's expense, to apply for the then-current ALTA  12
form of Owner's Policy of Title Insurance, together with homeowner's additional protection and inflation  13
protection endorsements if available at no additional cost, from the Title Insurance Company rather than the  14
Homeowner's Policy of Title Insurance.  15

3. ☐ **Extended Coverage Title Insurance.** Notwithstanding the "Title Insurance" clause in this Agreement, Buyer's  16
lender or Closing Agent is directed to apply for an ALTA or comparable extended coverage policy of title insur-  17
ance, rather than the policy provided for in the purchase and sale agreement. Buyer shall pay the increased  18
costs associated with the extended coverage policy including excess premium over that charged for the policy  19
provided for in the purchase and sale agreement and the cost of any survey required by the title insurer.  20

4. ☑ **Property And Grounds Maintained.** Until possession is transferred to Buyer, Seller agrees to maintain the  21
Property in the same condition as when initially viewed by Buyer. The term "Property" includes the building(s);  22
grounds; plumbing, heat, electrical and other systems; and all Included Items. Should an appliance or system  23
become inoperative or malfunction prior to transfer of possession, Seller agrees to either repair or replace the  24
same with an appliance or system of at least equal quality. Buyer reserves the right to reinspect the Property  25
within 5 days prior to transfer of possession to verify the foregoing. Buyer and Seller understand and agree that  26
the Listing Agent and Selling Licensee shall not, under any circumstances, be liable for the foregoing or Seller's  27
breach of this clause.  28

5. ☑ **Items Left by Seller.** Any personal property, fixtures or other items remaining on the Property when possession  29
is transferred to Buyer shall thereupon become the property of Buyer, and may be retained or disposed of as  30
Buyer determines. However, Seller agrees to clean the interiors of any structures and remove all trash, debris  31
and rubbish on the Property prior to Buyer taking possession.  32

6. ☑ **Utilities.** To the best of Seller's knowledge, Seller represents that the Property is connected to:  33
☑ public water main; ☑ public sewer main; ☐ septic tank; ☐ well (specify type) _____ ; 34
☐ irrigation water (specify provider) _____ ; ☐ natural gas; ☐ telephone;  35
☐ cable; ☑ electricity; ☐ other _____ .  36

Initials: BUYER: __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____ 37
BUYER: _____ DATE: _____ SELLER: _____ DATE: _____ 38

Form 22D
Optional Clauses Addendum
Rev. 5/09
Page 2 of 2

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**OPTIONAL CLAUSES ADDENDUM TO
PURCHASE & SALE AGREEMENT**
*(continued)*

7. ☐ **Insulation - New Construction.** If this is new construction, Federal Trade Commission Regulations require the following to be filled in. If insulation has not yet been selected, FTC regulations require Seller to furnish Buyer the information below in writing as soon as available:

    WALL INSULATION:   TYPE: _____ THICKNESS: _____ R-VALUE _____

    CEILING INSULATION: TYPE: _____ THICKNESS: _____ R-VALUE _____

    OTHER INSULATION DATA: _____

8. ☐ **Leased Property.** Buyer hereby acknowledges that Seller leases the following items of personal property, possession of which shall pass to Buyer on Closing:

    ☐ propane tank;  ☐ security system;  ☐ satellite dish;  ☐ other _____

    Buyer shall assume the lease for the items selected, perform all of the obligations of the lease, and hold Seller harmless from and against any further obligation, liability, or claim arising from the lease.

9. ☐ **Homeowners' Association Review Period.** If the Property is subject to a homeowners' association or any other association, then Seller shall provide Buyer a copy of the following documents (if available from the Association) within _____ days (10 days if not filled in) of mutual acceptance:

    1. Association rules and regulations, including, but not limited to architectural guidelines;
    2. Association meeting minutes from the prior two (2) years;
    3. Association Board of Directors meeting minutes from the prior six (6) months; and
    4. Association financial statements from the prior two (2) years.

    If Buyer, in Buyer's sole discretion, does not give notice of disapproval within _____ days (5 days if not filled in) of receipt of the above documents or the date that the above documents are due, then this homeowners' association review period shall conclusively be deemed satisfied (waived). If Buyer gives timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

10. ☐ **Excluded Item(s).** The following item(s), that would otherwise be included in the sale of the Property, is excluded from the sale ("Excluded Item(s)"). Seller shall repair any damage to the Property caused by the removal of the Excluded Item(s). Excluded Item(s):

    _____
    _____
    _____

11. ☑ **Other.**
    ~~Seller will empty the property two days before closing.~~

Initials: BUYER: __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____
         BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 22K
Identification of Utilities Addendum
Rev. 8/03
Page 1 of 1

© Copyright 2003
Northwest Multiple Listing Service
All Rights Reserved

# IDENTIFICATION OF UTILITIES
## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__ 1

between __Hong Dan Huang__ ("Buyer") 2

and __Stewart__ ("Seller") 3

concerning __7215 33rd Ave S, Seattle, WA 98118__ (the "Property") 4

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds necessary to satisfy unpaid utility charges affecting the Property. The names and addresses of all utilities providing service to the Property and having lien rights are as follows:

**WATER DISTRICT:**
Name
Address
City, State, Zip

**SEWER DISTRICT:**
Name
Address
City, State, Zip

**IRRIGATION DISTRICT:**
Name
Address
City, State, Zip

**GARBAGE:**
Name
Address
City, State, Zip

**ELECTRICITY:**
Name
Address
City, State, Zip

**GAS:**
Name
Address
City, State, Zip

**SPECIAL DISTRICT(S):**
(local improvement districts or utility local improvement districts)
Name
Address
City, State, Zip

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1) within ____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing Agent or Selling Licensee with the names and addresses of all utility providers having lien rights affecting the Property and (2) Buyer and Seller authorize Listing Agent or Selling Licensee to insert into this Addendum the names and addresses of the utility providers identified by Seller.

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges (including unbilled charges). Buyer understands that the Listing Agent and Selling Licensee are not responsible for, or to insure payment of, Seller's utility charges.

Initials: BUYER: __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 22SS
Short Sale Addendum
Rev. 5/09
Page 1 of 1

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# SHORT SALE ADDENDUM TO
# PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__

betwee __Hong Dan Huang__ ("Buyer")

and __Stewart__ ("Seller")

concerning __7215 33rd Ave S, Seattle, WA 98118__ ("the Property")

1. **SHORT SALE.** A "Short Sale" is a transaction that depends on Seller's creditor(s)' agreement to accept less than the amount secured by the Property in order to satisfy Seller's obligations at Closing. Buyer and Seller acknowledge that the purchase price is insufficient to cover Seller's obligations at Closing and that this Agreement constitutes a Short Sale.

2. **SHORT SALE CONTINGENCY.** This Agreement is contingent upon Seller obtaining written consent from Seller's creditor(s) for the Short Sale and Seller's acceptance of any conditions imposed by Seller's creditor(s) ("Lender Consent"). Seller shall have __45__ days (30 days, if not filled in) after mutual acceptance to obtain Lender Consent. If Seller timely delivers a copy of the Lender Consent to Buyer, then this contingency shall be deemed satisfied. If Seller fails to timely deliver the Lender Consent to Buyer, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer. Buyer and Seller acknowledge that Seller has limited control over whether Seller's creditor(s) will consent to the sale and when such consent is given.

3. **OFFERS FROM OTHER BUYERS.** Seller [ ] may; [✓] may not (may, if not filled in) accept offers from other buyers to purchase the Property to submit to Seller's creditor(s). The parties are advised that some creditors may require that Seller accept multiple offers in order to satisfy Seller's obligations to its creditors. If the parties agree that Seller may accept offers from other buyers, Buyer acknowledges that this Agreement does not have any priority over agreements with or offers from other buyers. Seller has limited control over which agreement Seller's creditor(s) may approve, and Seller may keep the Property on the market and continue to show it to other buyers.

4. **TERMINATION BY BUYER.** Buyer [✓] may; [ ] may not (may, if not filled in) terminate this Agreement at any time prior to the delivery of Lender Consent. If Buyer terminates this Agreement, the Earnest Money, if deposited, shall be refunded to Buyer.

5. **COMPUTATION OF TIME.** For the purposes of computing time only (except for paragraph 2 above) including the deposit of Earnest Money, mutual acceptance shall be deemed to be on the date of delivery of the Lender Consent to Buyer.

6. **IMPLICATIONS OF A SHORT SALE.** The parties acknowledge that this Addendum does not fully explain all of the implications of a Short Sale. The parties are advised to seek the advice of third party professionals regarding this Agreement and the consequences of this Addendum.

Initials: BUYER: __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____
BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 22T
Title Contingency Addendum
Rev. 6/06
Page 1 of 1

©Copyright 2006
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# TITLE CONTINGENCY
## ADDENDUM TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__

betwee __Hong Dan Huang__ ("Buyer")

and __Stewart__ ("Seller")

concerning __7215 33rd Ave S, Seattle, WA 98118__ ("the Property")

1. **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance, together with easements, covenants, conditions and restrictions of record, which are to be obtained by Buyer, to determine that they are consistent with Buyer's intended use of the Property. Buyer shall have __3__ days (5 days if not filled in) ☐ from mutual acceptance of this Agreement or ☑ from the date of Buyer's receipt of the preliminary commitment for title insurance (from mutual acceptance, if neither box checked) to give written notice of Buyer's disapproval and the reasons therefore. Buyer may only disapprove exceptions that are contained in the preliminary commitment and may not object to matters not contained therein.

   Seller shall have _____ days (5 days if not filled in) after receipt of Buyer's notice of disapproval to give Buyer written notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to cure all disapproved exceptions. If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the Agreement, the Earnest Money shall be returned to Buyer, less any unpaid costs described in the Agreement. Buyer shall have no right to specific performance or damages as a consequence of Seller's inability to provide insurable title. If Buyer does not terminate the Agreement, Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear.

2. **Supplemental Title Reports.** If Buyer receives supplemental title reports that disclose new exception(s) to the title commitment, then the time periods and procedures for notice, correction, and termination above shall apply to the date of Buyer's receipt of the supplemental title report.

3. **Marketable Title.** This Addendum does not relieve Seller of the obligation to provide marketable title at closing as provided in the Agreement.

Initials: BUYER: __HDH__ DATE: __8/22/09__ SELLER: _____ DATE: _____

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 35  
Inspection Addendum  
Rev. 7/09  
Page 1 of 2

©Copyright 2009  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

# INSPECTION ADDENDUM TO PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __August 22, 2009__ 1

betwee __Hong Dan Huang__ ("Buyer") 2

and __Stewart__ ("Seller") 3

concerning __7215 33rd Ave S, Seattle, WA 98118__ ("the Property"). 4

1. ☑ **a. INSPECTION CONTINGENCY.** This Agreement is conditioned on Buyer's subjective satisfaction with inspections 5
of the Property and the improvements on the Property. Buyer's inspections may include, at Buyer's option and with- 6
out limitation, the structural, mechanical and general condition of the improvements to the Property, compliance with 7
building and zoning codes, an inspection of the Property for hazardous materials, a pest inspection, and a soils/ 8
stability inspection. 9

   **Buyer's Obligations.** All inspections are to be (a) ordered by Buyer, (b) performed by inspectors of Buyer's choice, 10
and (c) completed at Buyer's expense. Buyer shall not alter the Property or any improvements on the Property with- 11
out first obtaining Seller's permission. Buyer is solely responsible for interviewing and selecting all inspectors. Buyer 12
shall restore the Property and all improvements on the Property to the same condition they were in prior to the 13
inspection. Buyer shall be responsible for all damages resulting from any inspection of the Property performed on 14
Buyer's behalf. 15

   **BUYER'S NOTICE.** This inspection contingency SHALL CONCLUSIVELY BE DEEMED WAIVED unless within __8__ 16
days (10 days if not filled in) after mutual acceptance of this Agreement (the "Initial Inspection Period"), Buyer gives 17
notice (1) approving the inspection and waiving this contingency; (2) disapproving the inspection and terminating the 18
Agreement; (3) that Buyer will conduct additional inspections; or (4) proposing repairs to the Property or modifi- 19
cations to the Agreement. If Buyer disapproves the inspection and terminates the Agreement, the Earnest Money 20
shall be refunded to Buyer. If Buyer proposes repairs to the Property or modifications to the Agreement, including 21
adjustments to the purchase price or credits for repairs to be performed after closing, the parties shall negotiate as 22
set forth in paragraph 1.c, below. The parties may use NWMLS Form 35R to give notices required by this 23
Addendum. 24

   **ATTENTION BUYER:** If Buyer fails to give timely notice, then this inspection contingency shall be deemed waived 25
and Seller shall not be obligated to make any repairs or modifications. 26

   **b. Additional Inspections.** If an inspector recommends further evaluation of any item by a specialist, Buyer shall 27
have an additional _____ days (5 days if not filled in) to obtain the additional inspection by a specialist at Buyer's 28
option and expense. On or before the end of the Initial Inspection Period, Buyer shall provide a copy of the 29
inspector's recommendation and notice that Buyer will seek additional inspections by specialists as recommended 30
by the inspector. If Buyer gives timely notice of additional inspections, the Initial Inspection Period shall be 31
extended by the additional period specified above. The time for conducting additional inspections shall commence 32
on the day after Buyer gives notice under this paragraph, and shall be determined as set forth in the Computation 33
of Time paragraph of the Agreement. 34

   **c. Buyer's Requests for Repairs or Modifications.** If Buyer requests repairs or modifications under paragraph 35
1.a above, the parties shall negotiate as set forth in this paragraph. 36

   (i) **Seller's Response to Request for Repairs or Modifications.** Seller shall have _____ days (3 days if 37
not filled in) after receipt of Buyer's request for repairs or modifications to give notice that Seller (a) agrees to 38
the repairs or modifications proposed by Buyer; (b) agrees to some of the repairs or modifications proposed by 39
Buyer; (c) rejects all repairs or modifications proposed by Buyer; or (d) offers different or additional repairs or 40
modifications. If Seller agrees to the terms of Buyer's request for repairs or modifications, this contingency shall 41
be satisfied and Buyer's Reply shall not be necessary. If Seller does not agree to all of Buyer's repairs or 42
modifications, Buyer shall have an opportunity to reply, as follows: 43

   (ii) **Buyer's Reply.** If Seller does not agree to all of the repairs or modifications proposed by Buyer, Buyer shall 44
hav _____ days (3 days if not filled in) from either the day Buyer receives Seller's response or, if Seller 45
fails to respond, the day Seller's response period ends, whichever is earlier, to (a) accept the Seller's response 46
at which time this contingency shall be satisfied; (b) agree with the Seller on other remedies; or (c) disapprove 47
the inspection and terminate the Agreement, in which event, the Earnest Money shall be refunded to Buyer. 48

Initials: BUYER: __HDH__ DATE: __8/24/09__ SELLER: _____ DATE: _____ 49

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____ 50

Form 35
Inspection Addendum
Rev. 7/09
Page 2 of 2

©Copyright 2009
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# INSPECTION ADDENDUM TO PURCHASE & SALE AGREEMENT
(continued)

**ATTENTION BUYER:** These time periods for negotiating repairs or modifications shall not repeat. The parties must either reach a written agreement or Buyer must terminate this Agreement by the Buyer's Reply deadline set forth in paragraph 1.c.ii. Buyer's inaction during Buyer's reply period shall result in waiver of this inspection condition, in which case Seller shall not be obligated to make any repairs or modifications whatsoever AND THIS CONTINGENCY SHALL BE DEEMED WAIVED.

**d. Repairs.** If Seller agrees to make the repairs proposed by Buyer, then repairs shall be accomplished at Seller's expense in a commercially reasonable manner prior to the Closing Date. In the case of hazardous materials, "repair" means removal or treatment (including but not limited to removal or, at Seller's option, decommissioning of any oil storage tanks) of the hazardous material at Seller's expense as recommended by and under the direction of a licensed hazardous material engineer or other expert selected by Seller. Seller's repairs are subject to reinspection and approval, prior to Closing, by the inspector who recommended the repair, if Buyer elects to order and pay for such reinspection.

**e. Oil Storage Tanks.** Any inspection regarding oil storage tanks or contamination from such tanks shall be limited solely to determining the presence or non-presence of oil storage tanks on the Property, unless otherwise agreed in writing by Buyer and Seller.

2. **ON-SITE SEWAGE DISPOSAL SYSTEMS ADVISORY.** Buyer is advised that on-site sewage disposal systems, including "septic systems," are subject to strict governmental regulation and occasional malfunction and even failure. Buyer is advised to consider conducting an inspection of any on-site sewage system in addition to the inspection of the Property provided by this Form 35 by including an appropriate on-site sewage disposal inspection contingency such as NWMLS Form 22S (Septic Addendum).

3. ☐ **NEIGHBORHOOD REVIEW CONTINGENCY.** Buyer's inspection includes Buyer's subjective satisfaction that the conditions of the neighborhood in which the Property is located are consistent with the Buyer's intended use of the Property (the "Neighborhood Review"). The Neighborhood Review may include Buyer's investigation of the schools, proximity to bus lines, availability of shopping, traffic patterns, noise, parking and investigation of other neighborhood, environmental and safety conditions the Buyer may determine to be relevant in deciding to purchase the Property. If Buyer does not give notice of disapproval of the Neighborhood Review within _____ (3 days if not filled in) of mutual acceptance of the Agreement, then this Neighborhood Review condition shall conclusively be deemed satisfied (waived). If Buyer gives a timely notice of disapproval, then this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.

4. ☐ **PREINSPECTION CONDUCTED.** Buyer, prior to mutual acceptance of this Agreement, conducted a building, hazardous substances, building and zoning code, pest or soils/stability inspection of the Property, and closing of this Agreement is not conditioned on the results of such inspections. Buyer elects to buy the Property in its present condition and acknowledges that the decision to purchase the property was based on Buyer's prior inspection and that Buyer has not relied on representations by Seller, Listing Agent or Selling Licensee.

5. ☐ **WAIVER OF INSPECTION.** Buyer has been advised to obtain a building, hazardous substances, building and zoning code, pest or soils/stability inspection, and to condition the closing of this Agreement on the results of such inspections, but Buyer elects to waive the right and buy the Property in its present condition. Buyer acknowledges that the decision to waive Buyer's inspection options was based on Buyer's personal inspection and Buyer has not relied on representations by Seller, Listing Agent or Selling Licensee.

Initials: BUYER: _HDH_ DATE: _8/22/09_ SELLER: _____ DATE: _____

BUYER: _____ DATE: _____ SELLER: _____ DATE: _____

Form 42
Agency Disclosure
Rev. 1/97
Page 1 of 1

©Copyright 1997
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

# AGENCY DISCLOSURE

Washington State law requires real estate licensees to disclose to all parties to whom the licensee renders real estate brokerage services whether the Licensee represents the Seller (or Lessor), the Buyer (or Lessee), both the Seller/Lessor and Buyer/Lessee, or neither.

YOU ARE ADVISED THAT THE UNDERSIGNED IS THE AGENT OF THE BUYER UNLESS OTHERWISE STATED HERE:

THE UNDERSIGNED REPRESENTS **Buyer,**

**THE UNDERSIGNED BUYER/LESSEE OR SELLER/LESSOR ACKNOWLEDGES RECEIPT OF A COPY OF THE PAMPHLET ENTITLED "THE LAW OF REAL ESTATE AGENCY"**

BUYER _Hongdun Hilung_ (Signature)   DATE _8/22/09_

BUYER _____ (Signature)   DATE ____

SELLER _____ (Signature)   DATE ____

SELLER _____ (Signature)   DATE ____

LICENSEE **Lang Zhou** (Print/Type)

LICENSEE'S SIGNATURE _[signature]_

COMPANY NAME AS LICENSED **Skyline Properties, Inc.** (Print/Type)